Good morning, Your Honor. May it please the Court. I'm appearing, John Gerard, on behalf of plaintiff and appellant Gabriel Pepper. I'm going to spend about five minutes of my time, then Grayson's counsel will spend about five minutes. We will then reserve five minutes for our rebuttal. Okay. Approximately three minutes for Grayson, two minutes for myself. Okay. All right. This is a case where the summary judgment should have been not been granted. It should be reversed because there were tribal issues that were presented to the Court and the Court applied the wrong legal standard. Essentially, in these kinds of cases involving third-party bad faith where you have the duty to settle, there are distinct rules that apply to that type of case as opposed to a first-party case. And in this case, the Court misapplied the standard. Now, let me get this straight. The policy limits here were $15,000? Correct. And we now have a judgment somewhere north of $2 million? Correct. And you're wanting what? Well, I represent Mr. Pepper. Right. And Mr. Pepper was exposed to that judgment as a result of the failure of Allstate to accept a reasonable offer within the time period that it was offered and before they counter-offered and cut off that offer. And so, as a result of the failure to accept the offer and to protect Mr. Pepper, my client, when they had the reasonable opportunity to do so, he has been subjected to the excess judgment because once that offer was counter-offered, in other words, once it was rejected by the inclusion of additional terms for property damage, including Allstate as an additional insured, disavowing the representations that were required, the plaintiff's counsel in the underlying case, Grayson's counsel, no longer had any duty to reinstate that offer at that point. And so my client was damaged at that point because of the failure of Allstate to protect him. And that's what the covenant is all about. So what should Allstate have done when the offer of settlement comes in for $15,000 for policy limits? Allstate is supposed to do what? Well, what Allstate is supposed to do at that point, they had already decided that the case was worth more than the policy limits, both from a liability standpoint and from a damage standpoint. Right. And so what they needed to do at that point was to protect their insured. A conflict of interest had now arisen between the insured and them because if they didn't cross their T's and dot their I's and do exactly what they were supposed to do in accepting that offer. Yeah, but I'm asking you what were they supposed to do? They are supposed to respond in a timely fashion to the offer and they are to accept the offer in a timely fashion. But the offer came in with no release attached. So the offer was would you please pay me $15,000? That's not a settlement yet. Well, it's not a settlement until Allstate agrees. But what I'm trying to figure out is if all Allstate does is say here's your $15,000 and there's no release of the defendant, well your defendant is left exposed. That's right. Correct? Okay. What I'm saying is any reasonable interpretation of this offer would tell you when they're saying we're willing to settle all the bodily injury claims and inclusive of all liens that this is not a request for a unilateral payment on the part of Allstate. This is a request to settle the case, to give up the claims and if Allstate then accepts that, you have a binding contract which protects Pepper. And if they want to memorialize that by asking Allstate, asking for a release that is consistent with the terms of the offer, there's not a problem with that. But isn't there cases that say that they could be held in some liability fashion if it didn't ask for a release? No. What those cases are concerned with, like Lato and Strauss. What about Wallace v. Allstate, Northern District of California? Same thing. You had multiple insureds and so in that case Wallace they were asking to settle with one of the insureds, I believe it was the driver or the owner, and they weren't going to settle with the other one. And so in that case the insurance company was properly saying you can't put us in a catch-22 where we have more than one insured who's covered by the policy and you're only willing to give up or settle your claims against one and leave the other one high and dry. But we don't have that situation here. You don't think they would have left your client high and dry if you would have just said, okay, here's your $15,000 plaintiff? No, but if this offer was accepted, they would have been protected because you would have had Allstate said they've accepted by countering and saying we accept. Now would you sign a release? We'll send you your check. The problem is that the release that they were insisting upon, they insisted upon a release that contained property damage, which was not part of the offer that was made by the plaintiff. They insisted on having a disavowal of the representations which were material to making the offer, namely that there was no other insurance that was involved, that he was not in the course and property damage. I understand the policy limits were $15,000 for personal injury. There was also, there was coverage with respect to the motorcycle, but they were in the process of asking you to, you know, figure out what it is. For them to say we're not paying that is misrepresenting the communications that went back and forth. No, not really, because what happens is they're saying you must sign this release. That's what the letter is saying before we're going to issue any kind of a check. The fact that they're talking about having some kind of an examination being done of the motorcycle doesn't change the fact that if he signed that release, if Grayson had signed that release, that says I'm giving up my property damage claim. And that then puts him in a position where if there is a disagreement down the road about property damage, he is at a disadvantage at that point because Allstate can say, well, you gave up your rights against us. You gave up your rights for the property damage. So Allstate is in a position now to put the screws to him as to the reasonable value of that property damage claim. So there was a very real issue there as to whether that was properly accepted or not. And weren't there attempts between at least Allstate communicating to Mr. Grayson's attorney to address some of those issues? In fact, even not just prior to the lawsuit, but even after the lawsuit? Yeah. Well, the problem is, is that as is recognized by a number of cases, for example, the McDaniel case, once the offer is rejected, any belated attempts to try and settle are not going to afford the insured, my client, Mr. Pepper, any protection because the damage has already been done. But there are also cases that say that even if it comes after the demand time that the doesn't reach the implied covenant. Well, that's, those are, a lot of those cases are out of state cases where you have different laws that apply in terms of the rules relating to insurance covenant that do not apply in California. The one that did come up in California was the Graciano case. And in Graciano, that the release that they're talking about in that case, the offer only was an offer to settle with someone named Jose, who was no longer had a valid policy. The holding was that, that they never made an offer to Saul, who was the actual insured. And so if they had accepted the offer to Jose, they would not have protected Saul. You're eating into the time that you're sitting to reserve for your time. There you go. Okay. Thank you. Good morning, Your Honor. Stan Jacobs, appearing before Mr. Graciano. I'd like to talk for a moment because our brief covers a lot of these points. I'd like to talk about the elephant in the room, if I may. Very often, and Allstate tries to frame it, that we're setting them up. Under California law, we can't set them up unless we make a reasonable offer capable of acceptance. If they don't accept it, they have a duty to accept a reasonable offer, which is defined. What if you reject without explanation their counter? What if you reject without explanation their counter? I'm not quite hearing you, Your Honor. If Allstate counters with an offer in response to your demand, and here we're talking about really conditions, not the amount. The amount is out there. Okay. If you reject with conditions, and they respond with conditions, and you reject without explanation, is that setting them up? That, no, not at all, because I represent Mr. Gracian, who has a life-altering injury. My duty is to Mr. Gracian. It's not to Allstate. I know if there's a small policy, Mr. Gracian is never going to be fully and adequately compensated. Well, of course. The one way I can do that, Your Honor, is to make an offer that's capable of acceptance. And if they don't do their duty to their insurer to protect him, because he's the one that's damaged, then that policy opens up. Once they counteroffer, because negotiations, settlement negotiations, are contract law in California. If you make a counteroffer, you reject. Once they reject, I don't have to entertain anything further and give up my client's rights. Can I ask you a question? Sure. I mean, in order for you to prevail, you've got to show bad faith, right? No. I have to show a breach of the covenant of good faith and fair dealing. There's no subjective need to show maliciousness or anything of that nature under Pasetti. Put it another way. You've got to show more than negligence. First of all, I have to show Do you agree or not? Yes, but those are old cases that the courts have used a lot of language over the years, depending on the case specific, when they use the term refusal, when they use the term rejection. They keep using different terms. The fact is the duty is to accept an offer when they know that liability is against them and that the damages exceed the policy. Yeah, here's what bothers me about the case from your side. You're trying to turn a $15,000 life insurance, excuse me, automobile insurance policy, plus damage to the physical, so the little back and forth there at the beginning as to the terms of the offer. That just strikes me as gotcha. That does not strike me as their breach of good faith and fair dealing. Your Honor, frankly, that's not the California law. In fact, one of the things that's in the record, when they finally consult an attorney, after they count her off, all they had to do was say, we accept, this is a proposed release. Would you entertain this? Under language of negotiation and contract, we say yes, we say no. If they offered a release conforming to the offer and we don't accept it, they're in reasonable grounds for not accepting because they have to protect their insurance. But when they go ahead knowingly that they're spotting the injury, they know it's not property damage, they know we're requiring to protect our own malpractice. Am I wrong in understanding the record that at the time they send this letter to you, they've actually said we'll send the motorcycle over for assessment of damage? But once we sign... No, please answer my question. No, they said that they wanted to look into the damages. But what would happen if we sign that release? It supersedes everyone. But if you are on your side trying to get a good faith settlement, why don't you say, hey, wait a minute, guys, you left out the motorcycle part of it. Because I don't represent them and they had a much more important provision. That offer to settle for bodily injury required them to show that they only had $15,000. It required them, and this is very important, it required them to say, I don't have any other insurance, I'm not in the scope of my employment, and then they have in the release, it says, we waive the fact that they made any representations. So that what happened, and they put Allstate in. That doesn't protect their insured. We sign that release and it turns out, and it has in the past, that there's more insurance coverage. He was in the scope of his employment. I've released Allstate. I've waived that right because that release is the final release. This adjuster knew that. She knew it had property damage. She knew it had these provisions. She had a right to cross it out, but she said, well, let the attorney raise it. It's not my duty to raise it. Okay. Once, once... You're down to about a minute if you want to save some time. Okay. I'd like to point out that even when, even when their attorney, the day afterwards, when the offer doesn't exist anymore, my client now has new rights that he, that he doesn't have to waive. In volume three, page 532 to 534, the release he said, says on page 534, the release or further declares and represents that no promise, inducement or agreement, not hearing expressed, has been made to the underside, and that this release contains the entire agreement between the parties hereto, and that the terms of this release are contractual and not mere recital. That's the point. Their release didn't say, propose, let's, we're not rejecting your offer, but we want to know what you'll sign. They have a duty to clarify. They have a duty to inquire. This is California law. They cite cases in other states. It's not the law in California. They're turning it on its head. Okay. Let's hear from the other side. Thank you. Yeah. Thank you. May it please the Court. John Brooks for Appley Allstate. The undisputed facts in this case are that Allstate repeatedly offered its policy limits in exchange for a release if it's insured. And the release you first sought, I think you will concede, was overly broad? The release that we first sought could technically be viewed as a counteroffer because it had terms that were beyond the breadth of the offer. That's true. We don't dispute that for the purposes of summary judgment. Does that make the counter unreasonably, objectively unreasonable? No, Your Honor. In the context of this case, Allstate is attempting to effectuate a settlement of the case. It did so once on November 12th with this offer that was viewed either pretextually or otherwise as too broad. Wait a minute. What are you putting in pretextually? It clearly was too broad. The release sought would have released you from any obligation to pay for the motorcycle. So it's too broad. Now they might have had motivations for refusing to accept it, but it's too broad. Your Honor, in the context of the cover letter that went out with the release that said this is settlement for the bodily injury portion of the claim and we want to set up an investigation of the motorcycle, I think it's fair to say that a reasonable jury could look at that and say that picking a fight over the language property damage in the release was an example of gamesmanship, not an example of a lawyer that was in good faith trying to settle the case. No, I'm not trying to excuse them from a charge of gamesmanship. I'm just trying to say that the release you offered was too broad. The property damage was not part of the offer. That's true. It was in the release, but the cover letter I think made clear the context. In any event, within four weeks of the accident happening, Allstate twice offered its policy limits in exchange for a release. It did so twice within the very amount of time that the claimant himself had set forth as the deadline for acceptance. This type of conduct, which is attempting to settle the case early and often, is the sort of thing that the law of California is meant to encourage not to punish. And what I would submit is that whether this court looks at the case through the lens of specific rules that have been articulated by the California courts or through the lens of what is the purpose of this tort of bad faith, either way that you look at it, the result that you get was that the district court was correct to grant summary judgment. I'd like to comment first on two of the specific rules and finish with the more broader big picture. But ultimately, prior to the lawsuit being filed, and I know there was some activity afterwards to try to get it settled as well, but prior to the lawsuit being filed, was there any response to the settlement conditions in the release from the plaintiff saying, well, look, we need to change this language, we need to delete this language? Does the record show any of that? What the record shows is that on approximately November 17th, the day after, two days after the demand expired, a letter came from Mr. Stoll saying, here are the things that we didn't like. I'm sorry, I'm getting the timeline a little bit wrong. A few days before the demand expired, a letter came from Mr. Stoll saying, here are the things we don't like about the demand. Condition number one, for instance, and you changed that. That's right. On November 17th, before the deadline set by the plaintiff himself had expired, a new offer was extended that deleted the things that were objected to. After that point, the only response from Mr. Stoll's office was not, there's still something wrong, there's something we want to fix. It was, gotcha. Advise your client about. Tell your client to open up the checkbook, we're off to the races. That's not the sort of thing that California law was meant to encourage, and to hold that a case like this is entitled to go to a jury on the facts that we have here would set a very bad precedent from a public policy perspective. You think the judge here wanted to hear some evidence at trial, and that's why he let it go to trial and then later on came with another decision on the law? I'm sorry, Your Honor, I didn't hear the question. In this particular case, issues like this sometimes go to trial because of some material factual dispute that might prevent summary disposition without trial. I was just trying to put it in the context of a trial judge on perhaps what changed after trial to lead to a result in your favor, at least on the law. There wasn't something that changed after trial. We won this case on summary judgment. There was no trial. But I thought there was some evidence presented in connection with the proceedings below. Well, there was an underlying trial, the liability and damages trial against Mr. Pepper. The two. And during the course of that trial, one of the defenses that was presented by Allstate on behalf of Mr. Pepper was that a release had been effected back in November 2011. It was tried in a bifurcated context, and the jury found that there was not an adequate acceptance of the proposed settlement option. There was no settlement contract. That's the only underlying trial. But the later bad faith case against Allstate, which is a separate lawsuit, never went to trial. It was decided on a summary judgment and properly for several reasons. One that's been touched upon already is the question of a release. Was a release offered? And is a release required to make a settlement offer a reasonable one that has to be accepted? And it was undisputed, and this is at page 299 through 300 of the record, was their own response to Allstate's undisputed facts that a release was not offered. And in that underlying trial, plaintiff's counsel, Mr. Stoll, tacked far to the right in saying, No, I didn't contemplate a release. I didn't have the authority to vary the terms one way or the other. I didn't have the authority to even seek clarification. He went that direction so that he could try to beat the defense of settlement at that stage. But having that, he can't come in this court and say, I would have been willing to give a release when he said the opposite to try to win the underlying case. In that part of the record concerning the trial itself, combined with the initial line of questioning we had here concerning your client's initial response to their demand, because, as you have argued, because perhaps you're saying the plaintiff here unreasonably rejected your terms of settlement, which you say were objectively reasonable, the initial offer counter from your client, assuming it's too broad, assuming that also means it's objectively unreasonable, does their misconduct excuse your client's initial? You argue perhaps technical issues. I don't view those as technical deficiencies, but as something more substantive. I'm not offering an explanation of facts by way of excuse, what I'm trying to do is align the facts with the law in California, which is that the point and the purpose of the implied covenant of good faith and fair dealing, as it applies to the duty to settle, is to discourage insurance companies from unreasonably refusing to settle a case in favor of rolling the dice because they think they might do better at trial. So you don't believe that was a refusal by your client to settle unless you had these additional broad terms? No, I believe that what the facts show was an attempt to settle that was an ineffective attempt. It was an inapt attempt. It contained some mistakes. The adjuster testified without contradiction that she's used the same method of attempting to settle cases for 39 years, and it has always worked until she ran into this particular claim and this particular claimant's counsel. And I think this may be irrelevant. I just want to make sure. But Allstate did duty defend. That is to say, Allstate paid for the defense at the trial that took place in the state court. Is that right? Oh, yes, Your Honor. You apparently didn't cut it down very much, but you did comply. So duty to defend is not at issue in any respect in this case. That's correct. In addition to the fact that there was no release offered and it was testified to by plaintiff's own counsel that one was not contemplated, that fact in itself is enough to justify the trial court's decision. There's also the issue of the timing of the offer. Both the first offer on November 12th and the second offer on November 17th that corrected the release and trimmed it down were both within the timeline that was specified for acceptance by Mr. Grayson's counsel himself. And under a line of cases in California, Lehto, Crane, and most recently Graciano, when an insurance company early in the claim tenders its full policy limits in exchange for a release of its insurance, that is good faith conduct as a matter of law. In the Graciano case, it took that a step further and made clear and held that as long as that offer is within the timeline specified by the claimant itself, there can be no argument about it. That is a sufficiently timely offer of policy limits. Is there a duty under California law for the insurer to consult with the insured about, say, terms of settlement like a release terms and conditions? And was that done here? There's evidence in the record that what is called an excess letter was sent very early in the claim by Allstate to Mr. Pepper. What an excess letter is is a letter that explains that there's the potential for risk above the limits. You have the right to consult an attorney. You might want to contribute some of your own money if it turns out to be necessary. Other than that letter? There is evidence in the record, although it was not argued in the papers, concerning consultations between Ms. Supron, the adjuster, and Mr. Pepper, where he was expressing concern that he wanted to be sure the release was broad enough. And you will find this in the claim notes section of the record in the November 2011 time period. So Ms. Supron did consult with Mr. Pepper, and he was very concerned that he wanted the release to be broad enough to protect him. Finally, I'd like to close with what I see as the big picture issue here. California law, the bad faith duty to settle, was created to discourage insurance companies from rolling the dice. The facts of this case are totally inconsistent with that type of inference. Allstate attempted to settle. Maybe it messed it up a little bit on the first effort, but then it moved to correct that still within the timeline specified by plaintiff's counsel, still within four weeks of the accident. If the court were to hold that a case on a fax like this could proceed to the jury, that would set a bad precedent from the point of view of policy because it would discourage reasonable good faith early settlements and encourage conduct that appears to be designed to avoid a settlement so that a claimant can have a $2.5 million claim instead of a $15,000 claim. That's bad for the state because the state's public policy prefers settlements, and it's bad for the insureds because if you've got a rule of law that encourages settlements, it means that people like Mr. Pepper are protected and his case gets settled in November 2011. But if you articulate a rule that says, no, a case like this can go to the jury, then that gives more incentive to claimant's counsel to find ways to avoid a settlement if they can so that they can take the case to trial, and that puts insureds at risk of having to go through litigation and face the potential of a judgment against them. So for all those reasons, the lack of a release, the timeliness of the repeated settlement offers by Allstate, and because Allstate's conduct itself is just inconsistent with the rule that motivates or the concern that underlies California's tour to the implied covenant of good faith and fair dealing, I submit that the district court's judgment should be affirmed. If there are questions, I'd be happy to address them. I see no further questions from the bench. Thank you. Thank you, Your Honor. Now you've got eight seconds left. Why don't we put two minutes on the clock? Thank you, Your Honor. If it pleases the court, I call the court's attention to McDaniel v. Geico. It's cited in our brief on page 22. It's a federal case interpreting California law, and it states, as long as an insurer is under a duty to accept reasonable settlement offers, then the failure to timely, and we have a time-sensitive policy limits demand. She knew that, and she said, Justice said, I had enough time. I didn't need clarification. If an insurer is under a duty to accept reasonable settlement offers, then the failure to timely act while the reasonable offer remains open breaches the duty as much as an express rejection of the offer that considered the insurer's interest. All states have to do. They're the good hands, people. Think, put your insurer's interest at least equal to your own. You know what the offer is. You know your release was nonconforming. You sent it anyway, and you gambled. That the plaintiff's lawyer would call up and get into a negotiation with you. The offer was a firm offer. The lower court said it was a reasonable offer. You didn't accept it. They bifurcated. Their lawyer that they paid for this defense issued affirmative defense, plaintiff affirmed defense of settlement according to satisfaction. They tried that issue first. They lost it. They kept taking the position, we did settle, we did settle, we did settle. Now defense counsel comes in on the breach of the covenants, even I use the term bad faith, when Borsetti, which we cite on page 22, no requirement to establish subjective bad faith. Their attorneys come in for the first time. They argue you're supposed to send us a release. That's not how the practice runs. When there's an agreement, a settlement, we're going to settle a bodily injury claim. It includes all liens. Then you send a conforming release. And if there's something you want to know, you then say very simply, can we conclude this, are you interested in this, this is proposed. We're not rejecting, and you keep the negotiation going. But a counteroffer, you sign this release, you waive the representation that you weren't in the scope of your employment, you waive the representation that you only have $15,000 in insurance, then we'll send you the money. Okay. Got it. Thank you very much. Thank you.
judges: W. Fletcher, Gould, Lemelle